IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RANDI L. CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-1503 |
| ) | Judge Joy Flowers Conti |
| JOHN E. POTTER, Postmaster General ) | Magistrate Judge Lisa Pupo Lenihan |
| UNITED STATES POSTAL SERVICE, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that the Defendant's Motion for Summary Judgment be granted.

**II. REPORT**

This case involves claims related to Defendant's alleged discriminatory termination of Plaintiff, Randi L. Clark ("Clark"). Plaintiff has brought claims of gender and disability

discrimination pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, respectively.[1]

Because Plaintiff has withdrawn her claim of gender discrimination and because a reasonable jury could not find, on the basis of the record evidence, that Clark is "disabled", *i.e.*, that she suffers a "substantial limitation" on a major life activity, Defendant's Motion for Summary Judgment should also be granted.

### A.  Statement of Facts and Procedural History

This case is a civil action for relief in consequence of Defendant's alleged discriminatory termination of Plaintiff.

Beginning in January, 1999, Plaintiff was employed by Defendant, the United States Postal Service ("the USPS") as a Temporary Relief Carrier ("TRC") at the Evans City Post Office.  In September of that year she was reassigned to a Rural Carrier Associate ("RCA") position.  As an RCA, Plaintiff was only guaranteed work on Saturday, the scheduled day off for the regular rural carrier for whom she substituted.  However, Plaintiff received additional work on the regular carrier's sick and annual leave, and sometimes substituted for other carriers as well. As an RCA, Plaintiff's primary responsibilities included sorting, casing, loading and

---

1. The Rehabilitation Act of 1973 prohibits federal agencies from discriminating against their disabled employees in hiring, placement or advancement.  See Mengine v. Runyon, 114 F.3d 415, 418 (3d Cir. 1997).  It is subject to the same substantive standards for determining liablity as the Americans With Disabilities Act (the "ADA").  See McDonald v. Commonwealth of Pennsylvania, 62 F.3d 92, 94 (3d Cir. 1995) (citing Myers v. Hose, 50 F.3d 278, 281 (4th Cir. 1995)).

delivering mail along a rural route.  Her job requirements included being able to drive a vehicle and an ability to lift parcels weighing up to seventy (70) pounds.

From approximately December, 2001 through March, 2002, Plaintiff was placed on temporary limited duty owing to a work-related elbow injury, sustained while Plaintiff was removing mail from her vehicle.  Three months later, in June, 2002, Plaintiff was injured in a non-work-related automobile accident and sought medical treatment, including treatment for a neck injury, specifically a bulging disk between her C5 and C6 vertebra.  She continued, however, her work as an RCA until June, 2003.

In early June, 2003, Plaintiff was hospitalized for three days with gall bladder problems and her physician advised her to take time off work to allow her pre-existing injuries to heal.  On June 26, 2003, Plaintiff provided Defendant a note from her treating physician, Dr. Nesbitt, indicating that she would require two months off in hopes of recovering from alleged ongoing disability from her injuries.  Plaintiff asserts those injuries prevented her from lifting more than ten (10) pounds and from continuing employment as an RCA.[2]  At the end of that two month period, Plaintiff still remained absent from work and continued to be absent through her termination, effective November 18, 2003.  Subsequent to her employment with the USPS, Plaintiff was employed at Chuckie Cheese for up to 34 hours per week, at which position she bussed tables, prepared food and cashiered.  See Plaintiff's Deposition testimony at pp. 11-12.

On October 1, 2004, Plaintiff filed the instant lawsuit.

---

2. Defendant asserts that prior to that time Plaintiff had been disciplined for multiple failures to report to work for reasons other than the alleged medical disabilities, including babysitting problems, car problems, spouse problems, and leisure activities.  See Notice of Removal, Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 4 n. 1.

B. **Motion for Summary Judgment**

Summary judgment is to be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  And a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

All doubts as to the existence of a genuine issue of material fact are resolved against the moving party, and the entire record is examined in the light most favorable to the nonmoving party.  Continental Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982).  However, the nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson, 477 U.S. at 257.

 Rule 56 requires the entry of summary judgment if, after adequate time for discovery, a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the evidence is merely colorable, or not significantly probative, summary judgment may be granted.  Anderson, 477 U.S.  at 249-50.  "'Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict.'"  Gray v. York Newspapers, Inc., 957 F.2d 1070, 1087 (3d Cir. 1992) (overrruled on other grounds, Griffiths v. CIGNA Corp., 988 F.2d 457 (3d Cir. 1998) (quoting In re Paoli RR

4

Yard PCB Litigation, 916 F.2d 829, 860 (3d Cir. 1990)).  See also Jalil v. Avdel Corp., 873 F.2d 701, 707 (3d Cir. 1989) (noting that "a defendant is entitled to summary judgment if it can demonstrate that the plaintiff could not carry its burden of proof at trial").

    C.  **Analysis**

Plaintiff has, appropriately, withdrawn her claim of gender discrimination.[3]  See Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

The remaining claim is one for disability discrimination. To establish a *prima facie* case of unlawful discrimination under the ADA and the Rehabilitation Act, a plaintiff must establish that (1) she has a disability within the meaning of the ADA; (2) she is "otherwise qualified" to perform the essential functions of the job, with or without reasonable accommodation; and (3) she has suffered an adverse employment action as a result of her disability.  See Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996).  An employer is required to provide reasonable accommodation to an employee disabled within the meaning of the Act.  See Taylor v. Phoenixville School Dist., 174 F.3d 142, 157 (3d Cir. 1999); Kralik v. Durbin, 130 F.3d 776, 78 (3d Cir. 1997).  This Court need go no further than to note that Plaintiff has not established a genuine issue for trial as to the first element.

---

3. To establish a *prima facie* case of gender discrimination under Title VII, a plaintiff must establish that (1) she belongs to a protected class; (2) she was qualified for the position at issue; (3) she was subject to an adverse employment action; and (4) non-members of the class were treated more favorably or the circumstances give rise to an inference of unlawful discrimination. See Stewart v. Rutgers, 120 F.3d 426, 432 (3d Cir. 1997); Walden v. St. Gobain Corp., 323 F.Supp.2d 637, 642 (E.D. Pa. 2004).

5

"Disablity" for purposes of the applicable statute is a physical or mental impairment that effects a "substantial limitation" on one or more of the major life activities of such individual. "Major life activities" refers to those that are of central importance to daily life.  See Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002).[4]  In order to be properly characterized as disabled because of a substantial limitation on a major life activity, a plaintiff must suffer a more than moderate reduction in these abilities.  Id. (explaining that "substantially limiting" impairment is one that "prevents or severely restricts" the major life activities).  More broadly, the Circuit Court has "glean[ed] two general propositions from [its prior] opinions: (1) courts must adjudicate ADA claims on a case-by-case basis; and (2) [the Circuit has] held only *extremely limiting* disabilities - in either the short or long-term - to qualify for protected status under the ADA."  Marinelli v. City of Erie, Pa., 216 F.3d 354, 366 (3d Cir. 2000).

The Courts have taken care to note that the qualifications for protection under the auspices of the ADA are not intended to be uncharitable toward, and do not reflect a lack of sympathy for, individuals with lesser disabilities.  They are, however, necessary to the purposes of the Act, *i.e.*, to shield from adverse employment actions those individuals whose medical difficulties substantially prevent them from engaging in significant daily activities..  See Orr v. Wal-Mart Stores, Inc., 297 F.3d 720, 724 (8th Cir. 2002) (concluding that moderate limitations do not constitute disabilities under the ADA and that "[t]o hold otherwise could expand the ADA to recognize almost every working American as disabled to some degree"); Taylor v. Pathmark Stores, Inc., 177 F.3d 180 (3d Cir. 1999) (stating that "the purpose of the ADA would be

---

4. See also 29 C.F.R. § 1630.2(i) (providing examples of "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working").

undermined if protection could be claimed by those whose relative severity of impairment was widely shared"); Toyoto, 534 U.S. at 197 (directing that terms of statute must be "interpreted strictly to create a demanding standard for qualifying as disabled").

Plaintiff need not prove her disability to survive a motion for summary judgment.[5] She must, however, produce evidence from which a reasonable jury could reach a verdict in her favor. Plaintiff alleges that her "damaged ulnar nerve and a herniated or bulging vertebrae" together with her "chronic depression" substantially limits her performance of manual tasks, walking, driving, lifting and sleeping. See Plaintiff's Brief in Opposition at 5-6. More specifically, she asserts that (a) she often requires assistance with household and personal care; (b) she had extreme difficulty sleeping during the two-year period from Fall 2002 through December 2004, and still has limited sleep; (c) she can only walk approximately one-quarter mile at a time; (d) her driving ability is limited by her inability to turn her head from side to side and she could at times only drive five miles without stopping to rest; and (e) she continues to have substantial pain on lifting even as little as ten (10) pounds. See id. at 6-7.

The question first before this Court is whether Plaintiff has presented evidence sufficient to allow a reasonable jury to find her disabled within the scope of the ADA. Plaintiff's testimony has also been that she remained generally capable of performing personal hygiene, preparing meals, undertaking household chores and childcare, walking, sleeping, and driving. See Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 13-15 (citing Plaintiff's Deposition testimony at pp. 45-48, describing disabilities of limited nature and duration). Moreover, her testimony is also that after her termination from the USPS she obtained

---

5. See Plaintiff's Response to Reply Brief at 2.

subsequent employment requiring her to bus tables, work in food preparation and cashier.  See id. (citing Plaintiff's Deposition testimony at pp. 11-12).  See Toyota, 534 U.S. at 198-202 (holding, as to plaintiff whose impairments caused reduction in personal activities, personal care abilities, and driving distances, that such life changes "did not amount to such severe restrictions in the activities that are of central importance to most people's daily lives" to evidence disability).

Thus, Plaintiff's evidence does not rise to that from which a reasonable jury could find "substantial limitation."  To the contrary, Plaintiff's own testimony indicates that her restrictions are not substantially limiting and she has provided no medical-provider evidence of a substantially disabling condition.  Rather, her physician's letter of June 26, 2003 indicates only that she had chronic neck pain, aggravated by her work, and related depression, and would therefore require two months off.  Her physician's letter of August 13, 2003 states only that she continued to have neck pain aggravated by her employment as an RCA.  See Sever v. Henderson, 2005 WL 1940786, __ F.Supp.2d ___ (M.D. Pa. Aug. 10, 2005) (observing that it is insufficient for individuals attempting to prove disability status to merely submit evidence of medical diagnosis of impairment; claimant must prove disability by offering evidence that extent of limitation is substantial). Accordingly, Plaintiff has failed to prove a *prima facie* case of disability discrimination.[6]

---

6. Because this Court should conclude that Plaintiff has not established her disability status, it need not reach the question of whether she has met her *prima facie* burden regarding her ability to perform the essential functions of the RCA position with reasonable accommodation.  It notes, however, that it would be inclined to hold that Plaintiff has failed to raise a genuine issue of material fact on this element as well.

(continued...)

Finally, Plaintiff asserts that she has established a genuine issue of pretext because, essentially, she was absent from work for six (6) months because Defendant refused to provide accommodation without which Plaintiff was unable to "do her job." See Plaintiff's Brief in Opposition at 16-17. First, even if Plaintiff's unavailability for work was attributable to Defendant's refusal to meet her accommodation requests, that would not render pretextual Defendant's reason for terminating Plaintiff's employment. Second, under Plaintiff's asserted line of reasoning, her claim of discriminatory discharge necessarily rises and falls on Plaintiff's failure

---

6. (...continued)

More specifically, Plaintiff asserts that her lifting restrictions do not impede an essential job function despite an express job requirement that an RCA be able to lift packages weighing up to seventy (70) pounds . While Plaintiff now concedes that Defendant was not obligated to meet her requests for a permanent limited or light duty assignment, as none was available (see Plaintiff's Brief in Opposition at 11-12), she argues that reasonable accommodation was possible because (a) few packages weigh the full seventy (70) pounds, (b) she could group mail for delivery into smaller bundles, and (c) other employees were able to assist Plaintiff in lifting during the post-accident time she continued work as an RCA, *i.e.*, from June, 2002 through June, 2003. See Plaintiff's Brief in Opposition at 7-8, 12-13. As Defendant observes, however, Plaintiff asserts restrictions on lifting items in excess of ten (10) pounds, and it is well settled that an employer need not have other employees cover job duties. See, *e.,g.*, Donahue v. Consolidated Rail Corp., 224 F.3d 226, 232 (3d Cir. 2000) (holding that a request to have other employees "cover" for a disabled employee is a request "to be exempted from an essential duty"); Phelps v. Optima Health, Inc., 251 F.3d 21, 26 (1st Cir. 2001) (holding that it was not a reasonable accommodation to require coworkers to do plaintiff's lifting).

Although Plaintiff also asserts that she could have been accommodated by transfer to a clerk position, she expressly concedes that the position would have been a promotion, and that an employer is not required to promote an employee as an accommodation. See Plaintiff's Brief in Opposition at 12-13; see also Defendant's Reply Memorandum at 6-7 (addressing this aspect of Plaintiff's Brief in Opposition); Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 22-27 (same). Moreover, Plaintiff ignores the impact of her alleged ten (10) pound lifting restriction on her ability to perform the essential functions of the clerk's position. See Defendant's Reply Memorandum at 7-8; Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 28-29. Cf. Donahue, 224 F.3d at 234 (directing that where, after opportunity for discovery, record is insufficient to establish the existence of an appropriate position to which plaintiff could have been transferred, defendant is entitled to summary judgment on that issue).

to accommodate claim, as to which she has also failed to make out a cause of action. Because, as discussed *supra*, Plaintiff has not established a genuine issue of "disability", and because Defendant was under no duty to meet Plaintiff's requested accommodations, Plaintiff cannot avail herself of assertions that Defendant's failure to accommodate caused her six month absence.

### III. CONCLUSION

Owing to Plaintiff's voluntary withdrawal of her gender discrimination claim and her failure to proffer sufficient evidence to support her claim of disability discrimination, as more fully set forth above, it is recommended that the Motion for Summary Judgment be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

     /s/ Lisa Pupo Lenihan  
LISA PUPO LENIHAN  
United States Magistrate Judge

Dated: November 1, 2005

cc:    The Honorable Joy Flowers Conti  
       United States District Judge

Dirk D. Beuth, Esq.
Law Offices of Neal A. Sanders
1924 North Main St. Extension
Butler, PA  16001
Counsel for Plaintiff

Lee J. Karl, Esq.
Asst. U.S. Attorney
Western District of Pennsylvania
700 Grant St., Suite 4000
Pittsburgh, PA  15219
Counsel for Defendant